UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Keith Letmon, | ) C/A No. 4:09-55-TLW-TER |
| Plaintiff, | ) |
| vs. | ) Report and Recommendation |
| Larry Powers;<br>Dr. Bianco, | ) |
| Defendants. | ) |

## I. PROCEDURAL BACKGROUND

The plaintiff, Keith Letmon ("plaintiff/Letmon"), filed this action under 42 U.S.C. § 1983[1] on January 12, 2009. At all times relevant to the allegations in the plaintiff's complaint, he was a pretrial detainee at the Spartanburg County Detention Facility ("SCDF"). Plaintiff is currently incarcerated at the Kirkland R & E Center. Plaintiff alleges that his constitutional rights were violated due to medical indifference.

Defendant Dr. Bianco filed a motion for summary judgment on May 6, 2009, along with exhibits and an affidavit. Because the plaintiff is proceeding pro se, he was advised on or about May 6, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th. Cir. 1975), that a failure to respond to the defendant's motion for summary judgment with additional evidence or counter affidavits could result in dismissal of his complaint.

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the district judge.

On June 11, 2009, defendant Powers filed a motion for summary judgment. Because the plaintiff is proceeding pro se, he was advised on or about June 12, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th. Cir. 1975), that a failure to respond to the defendant's motion for summary judgment with additional evidence or counter affidavits could result in dismissal of his complaint. Plaintiff filed a response on June 19, 2009.

## II. DISCUSSION

### A. FACTUAL ALLEGATIONS

While at the SCDF, plaintiff alleges that his constitutional rights were violated due to medical indifference. Specifically, plaintiff's allegations in his complaint are as follows, quoted verbatim:

> I've been incarcerated here at Spartanburg County Detention Center since March 19, 2008. But I've been with them since Oct. 7, 2007. While here I discovered a wart growing on my testicles. I wrote a medical request to be seen by medical. I don't recall the exact dates but I wrote to them about this problem for months. So I finally go to see the doctor about a possible staph infection on my right leg on a skin graft that I have. He tells me its nothing but skin over growth. So a few more months pass and a wart is growing on my penis so I continue to write medical. No response. So I started writing the Warden who which[sic] is Larry Powers, about my problem. No response. So my mother who is Doris Letmon starts to call on my behalf to medical. I go to see Dr. Bianco again. But he tells me I got to wait until I get home to seek medical attention. So I let him know that it has already started to spread. Now it looks as if its growing on two of my fingers. So I write Larry Powers again and now he tells me that he sent my request to medical.

(Complaint).

Plaintiff requests "$100,000.00 for my physical and emotional pain. . ." (Complaint).

## C. LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520 (1979). Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime. Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials. If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld. Bell, 441 U.S. at 538.

## D. STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v.

Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

# E. DR. BIANCO'S MOTION FOR SUMMARY JUDGMENT

Dr. Bianco filed a motion for summary judgment asserting that no genuine issue of fact is presented to the effect that defendant Bianco exhibited deliberate indifference to any serious medical need of the plaintiff. Defendant Bianco further argues that any potential claim is barred by the Doctrine of Qualified Immunity and any potential claim for improper medical treatment under state law should be dismissed.

Defendant Bianco ("Bianco") submitted his affidavit and a copy of plaintiff's medical records from the SCDF. Bianco attests that he is a Board Certified family medicine physician and has performed services by contract with the SCDF in excess of five years. (Docs.#22-2 and #22-3). Bianco asserts that he has provided services for inmates both at the Center and at the Spartanburg Regional Medical Center. (Id.). On October 20, 2008, Bianco performed an evaluation on plaintiff in connection with an inmate request to see medical staff. (Id.). Plaintiff was complaining that he had previously had a draining knot on his right thigh but that it had resolved. On October 20, 2008, plaintiff was alert, oriented and in no acute distress. (Id.). Bianco asserts that plaintiff had a well healed skin graft scar on his right interior thigh which was a gunshot wound area. (Id.). Bianco also observed a "tiny slightly raised, flesh colored area which was nontender with no drainage ," with no signs or symptoms of infection and no medical treatment was indicated. On December 10, 2008, Dr. Bianco saw plaintiff with regard to an inmate request to see medical staff at which time plaintiff complained of two "warts" in the penile/scrotal area. (Id.). An examination revealed "normal male external genitalia," two tiny non-tender slightly raised, flesh colored lesions in the area, and the scrotal skin and penile shaft showed no drainage. (Id.). It was determined that no urgent treatment was needed at that time and a review of the record indicated that general complaints of this type had

been noted since the plaintiff's initial date of incarceration in October 2007. It was determined that the lesions did not look like warts and treatment, which is not medical indicated, can irritate lesions of this type. Bianco attests that each time he was made aware of a medical complaint by plaintiff, he evaluated the problem and prescribed any appropriate treatment. (Id.). At no time did Bianco disregard or ignore a medical complaint without a proper follow-up or evaluation.(Id.). In Bianco's opinion, the medical care he provided was appropriate and in accordance with the generally recognized and accepted standards of care required of a physician, and at no time is he aware of constitutional rights of the plaintiff that he violated. (Id.).

The undersigned finds that the plaintiff fails to show that defendant Bianco was deliberately indifferent to his medical needs. In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The

district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F. 2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. Russell v. Sheffer, 528 F. 2d 318, 319 (4th Cir. 1975).

The plaintiff has failed to show that he was denied medical treatment. As noted from Dr. Bianco's affidavit and plaintiff's medical records, plaintiff was examined on numerous occasions over the course of his incarceration by the medical personnel at SCDF. There is no evidence that defendant Bianco denied plaintiff medical treatment or care. Plaintiff has not presented any medical evidence to show that he suffered any permanent injury as a result of his allegations.

Even if plaintiff's allegations are true, he has shown nothing more than a disagreement with the medical treatment provided, not that he was completely denied medical treatment. Plaintiff has not put forth any allegation or evidence that he received anything other that <u>de minimis</u> injury. Additionally, plaintiff has failed to show that he had a serious medical need of which defendant Bianco knew about and consciously ignored. Plaintiff has not shown that any conduct by the this defendant "shocks the conscious" as required by <u>Miltier v. Beorn</u>, <u>supra</u>. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice" <u>Jackson v. Fair</u>, <u>supra.</u> The type and amount of medical care is left to the discretion of prison officials as long as medical care is provided. <u>Brown v. Thompson</u>, <u>supra</u>. Any disagreement between an inmate and medical personnel fails to state a claim unless exceptional circumstances are alleged . . . Although there is nothing to indicate that there were mistakes of medical judgment, even if shown, mistakes of medical judgement are not subject to judicial review in a § 1983 action. <u>Russell v.Sheffer</u>, <u>supra</u>. Based on the evidence presented, there has been no deliberate indifference shown to the overall medical needs of the

plaintiff by defendant Bianco in this action. For the above stated reasons, summary judgment should be granted in favor of defendant Bianco on this issue.[2]

**Qualified Immunity**

Defendant Bianco also asserts that he is entitled to qualified immunity.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general of abstract level, but at the level of its application to the specific conduct being challenged. Moreover, the manner in which this [clearly established] right applies to the actions of the official must also be apparent. As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F. 3d 993 (4th Cir. 1994) (internal citations omitted), *cert. denied*, 516 U.S. 824 (1985).

---

[2] As to any allegation plaintiff attempts to raise with regard to the conditions of confinement, it is recommended that these claims be dismissed as to this defendant who is medical personnel.

10

In <u>Torchinsky v. Siwinski</u>, 942 F. 2d 257 (4th Cir.1991), the Fourth Circuit Court of Appeals explained the rationale for <u>Harlow</u> qualified immunity:

> The grant of qualified immunity to government officials ensures that these officials can perform their duties free from the specter of endless and debilitating lawsuits. Without such immunity, the operations of government would be immobilized. Permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.

<u>Torchinsky</u>, 942 F.2d at 260-261. (Citations Omitted).

The <u>Torchinsky</u> court further noted that "a particularly appropriate procedure for determining an official's entitlement to qualified immunity is summary judgment." The <u>Torchinsky</u> court held that an official's entitlement to qualified immunity is based upon an "objective reasonableness" standard. "The very idea of reasonableness requires that courts accord interpretive latitude to officials judgments." <u>Torchinsky</u>, 942 F. 2d at 261, citing <u>Sevigny v. Dicksey</u>, 846 F. 2d 953 (4th Cir.1988). Therefore, a plaintiff may prove that his rights have been violated, but the official is still entitled to qualified immunity if a reasonable person in the "official's position could have failed to appreciate that his conduct would violate" those rights. <u>Torchinsky</u>, 942 F. 2d at 261, citing <u>Collinson v. Gott</u>, 895 F. 2d 994 (4th Cir. 1990). As the Fourth Circuit explained in the case of <u>Swanson v. Powers</u>, 937 F. 2d 965 (4th Cir.1991), "[o]nly violations of those federal rights clearly recognized in existing case law will support an award in damages under 42 U.S.C. § 1983." 937 F. 2d at 967. Therefore, if a particular action by a state agency is deemed unconstitutional, the defendant is entitled to qualified immunity, unless there is clearly established case law demonstrating that the alleged conduct is violative of the Constitution.

In <u>Maciariello v. Sumner</u>, 973 F. 2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

<u>Maciariello</u>, 973 F. 2d 295, 298 (4th Cir. 1992) (Citations omitted).

For a plaintiff to recover, he must show the defendants (i) violated a particular right clearly established in law, and (ii) the application of that right to the actions of the official must be apparent. The plaintiff in this case has not done so. Plaintiff fails to show that the defendants in this case "transgressed bright lines . . . officials are not liable for bad guesses in gray areas." <u>Maciariello</u>, <u>supra</u>. Therefore, the undersigned recommends that defendant Bianco's motion for summary judgment be granted on the basis of qualified immunity.

## **F. DEFENDANT POWERS' MOTION FOR SUMMARY JUDGMENT**

Defendant Powers filed a motion for summary judgment arguing plaintiff has not stated a constitutional deprivation sufficient for recovery under 42 U.S.C. §1983. Defendant Powers asserts that plaintiff claims he was deliberately indifferent to his medical care during his incarceration at the SCDF because he did not respond to his grievances. Powers argues that a failure to respond to

a grievance does not rise to the level of a constitutional violation, and even if so, the medical records of the SCDF contradict plaintiff's allegations.

Defendant Powers submitted his affidavit in which he attests that he is the Director of the SCDF and has been the Director since 1982. (Doc. #28-2). Powers asserts that as the Director of the SCDF, he is responsible for the jail's overall operation and management and is responsible for supervising the jail's day-to-day operations. (Id.). The SCDF is generally a pre-trial detainment facility and plaintiff was detained there on March 19, 2008, awaiting disposition of charges. Plaintiff had been detained at the SCDF in the past including an incarceration in October 2007. (Id.). When plaintiff complained of any medical problems, Powers deferred medical decisions regarding the inmates to the medical staff and Dr. Bianco. (Id.). Powers attests that plaintiff's allegations that he received no responses to his grievances is incorrect. (Id.). When Powers received a grievance, he forwarded them to the SCDF medical department who then provided treatment. (Id.). On October 17, 2008, plaintiff submitted an Inmate Grievance/Request Form to Powers concerning his medical care. Powers immediately forwarded the same to the medical department at the SCDF and plaintiff was examined by Dr. Bianco on October 20, 2008, who determined that no medical treatment was indicated at the time. (Id.). Further, plaintiff sent an Inmate Grievance/Request Form to Powers on December 9, 2008, regarding his medical care and it was forwarded to Dr. Bianco for review. (Id.). Plaintiff was again examined by Dr. Bianco who determined that no urgent treatment was needed based on the symptoms. (Id.). Plaintiff submitted an inmate Grievance/Request Form on January 29, 2009, regarding his medical care and the request was forwarded to the SCDF's medical department for review by Dr. Bianco who determined no medical care was warranted. (Id.). Powers was acting

within his discretion and duties as the Director of the SCDF and does not believe that he ever violated any of plaintiff's clearly established constitutional rights. (Id.).

Powers argues that there is no evidence before the court that he was personally involved with a denial of treatment, deliberately interfered with Dr. Bianco's treatment, or tacitly authorized or was indifferent to Dr. Bianco's alleged misconduct.

Any claims of medical indifference as to defendant Powers should be dismissed as he is not medical personnel and plaintiff has not shown that he interfered with plaintiff's medical care. The records submitted by the parties revealed that the Inmate Grievance forms completed by the plaintiff were forward to medical for review by the doctor to determine if any medical treatment was needed. (See docs. # 22-3) The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. Id. Under these principles, the plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding his medical treatment against the defendant Powers who is non-medical personnel. Plaintiff has failed to show that defendant Powers was personally involved with any alleged denial or delay of treatment or that he deliberately interfered with plaintiff's medical treatment. The records reveal that plaintiff's requests/grievances were forwarded to the medical department for review and to determine what treatment was needed. Therefore, any claims against defendant Powers for medical indifference fail and Power's motion for summary judgment should be granted.

Plaintiff has made allegations regarding the grievance procedure at SCDF and appears to allege that his grievances were not handled properly by defendant Powers. It is recommended that these allegations be dismissed as there is no constitutional right to participate in grievance proceedings. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).

Defendant Powers argues that to the extent plaintiff pursues his case against defendant Powers solely on allegations of supervisory liability, the claim fails. There are three elements necessary to establish supervisory liability under §1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994). To satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. Id. *citing* Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984). Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury. Id. A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses." Id. Causation is established when the plaintiff demonstrates and affirmative causal link between the supervisor's inaction and the harm suffered by the plaintiff. Id. Plaintiff has

failed to meet this burden in that he has failed to establish a constitutional violation. Thus, it is recommended that summary judgment be granted for defendant Powers on the theory of supervisory liability.

**Qualified Immunity**

Defendant Powers argues that he is entitled to qualified immunity.

The law as to qualified immunity is set out above and will not be repeated here. As previously discussed, for a plaintiff to recover, he must show the defendants (i) violated a particular right clearly established in law, and (ii) the application of that right to the actions of the official must be apparent. The plaintiff in this case has not done so. The undersigned cannot conclude that the defendant Powers "transgressed bright lines . . . officials are not liable for bad guesses in gray areas." Maciariello, supra. Therefore, the undersigned recommends that the motion for summary judgment filed by defendant Powers be granted on the basis of qualified immunity.

### III. PENDENT JURISDICTION

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

## IV.  CONCLUSION

For the reasons stated herein, it is RECOMMENDED that the defendant Bianco's motion for summary judgment (doc. #22 ) and defendant Power's motion for summary judgment (doc.# 28) be GRANTED.

IT IS FURTHER RECOMMENDED that any other outstanding motions be deemed MOOT.

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

February 4, 2010
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**